Admissions. We're going to hear two cases this morning. The first one is Adams Pointe versus Tru-Flex, Appellant number 20-3528. And your honor, I'd requested five minutes for rebuttal. That'll be granted. Thank you. May it please the court. My name is Rebecca Bell-Stanton, and I represent the appellants, the plaintiffs, the Adams Pointe entities, among others, in this appeal regarding the denial of class certification. It's unique in this situation in that according to the magistrate report as adopted by the district court, not a single element of Rule 23 is met by a preponderance of the evidence. I believe multiple phrases such as not a shred of evidence, no evidence. Counselor, how did you satisfy ascertainability? Your honor, on multiple levels. The first being what the actual ascertainability requirement entails, and that is the ability to identify through objective criteria, and then as added by the Third Circuit, the administrative feasibility prong. The administratively feasible method of identifying these plaintiffs. Your honor, similar to what you drafted in the concurrence in Byrd, we're able to provide not only the stream of sales in order to target for notice purposes, but also in addition, there can be documentary proof, photographic proof, as well. What documentary proof do you have? Your honor, it would have to be divided into two levels. The ownership aspect would be documentary proof, proof that someone owned the property itself. The definition targets the property owners. So how many plaintiffs have you identified? Your honor, in addition to the over 200 that are present just in the Adams Point area, we've identified, in terms of specific names, other than the name plaintiffs and the surrounding owners, we don't have any specific names. What method do you have for coming up with those names? Your honor, to answer that question, though, I kind of have to break it into two parts. In an effort to identify them for basis of notice, which has a little bit of a different aspect, and then the basis of identifying them for purposes of claims administration. For purposes of notice, we intend to identify them as explained in the trial court level by, through the stream of commerce. We have those evidence specifically provided in the record of not only the retail stores, but also... But you've had four years, haven't you, to come up with the names and way of identifying these people? Under city select there, there were records and affidavits, which we found was sufficient. I don't know that you have actual records that will help you, do you? We do, your honor. We have the records in terms of identifying the installers. That doesn't identify the class members. I think what Judge Randall is driving at is Carrera requires the plaintiffs to provide evidentiary support that they can ascertain. You've given conceptually where this information might be, but there is nothing in the record that shows an effort by either subpoenaing the installer or the retailer to get the homeowner's identities. And I think that's what we're driving at. Where in the record is there evidence of that such that we can see you fulfill the requirements of Carrera? Your honor, the subpoenas were issued. I do believe I need to correct that you've had four years representation. I know that that was made in the briefing and it was also the docket makes it appear that. But this case actually only had discovery that went towards these elements for approximately a year, not quite a year. Regardless of the amount of time, the caseload was clear about the burden placed on a plaintiff to satisfy this circuit's ascertainability requirement. Where in the record do we see evidence to show that the method by which you propose to ascertain the class members would succeed? I didn't see anything. The magistrate judge didn't see anything. Your honor, we provided, in terms of the methodology, we provided the evidence, I believe, if we look at the joint appendix, pages 971 through 977, the citations to the installer list, which... The installer list only tells us about the installers. It doesn't tell us that by going to those installers we would get the homeowners. Do we have any confirmation that they retained those records? No, your honor, we don't. We had requested those through subpoena. It was mentioned again during the record, during the hearing. Even the defendants acknowledged that the subpoenas had been issued, but as of the date of the certification hearing, responses had not been provided. Your honors, in regard to the specific identification, however, I do think that we need to go back to this court's precedent in developing the ascertainability standard. There is no, although the manufacturers characterize it as being able to identify in the first instance, i.e., the actual process from the moment of manufacture through the current ownership and installation, that actually isn't what is required, not even under this court's heightened standard. We should be considering now, as part of ascertainability, whether you can provide notice with the type of documentation that you've indicated you could obtain consistent with due process. Yes, your honor. In terms of notice on multiple levels, the first being this court has already recognized in the Byrd case and in City Select, and even more recently in the Sleepy's v. Hargrove case, that ascertainability, again, is not a record-driven, an ultimate customer list process. Not for due process, not for notice. Items such as, and again, to point out Judge Rendell's concurring opinion, everything from posting in common locations, the federal rules were amended in 2018 to specifically allow the best notice practicable. But here, the difficulty is the product at issue is often behind walls. Where do you start sending this notice apropos to what Judge Krause was driving at? Your honor, the same way that the manufacturers attempted to get notice out that their product was unsafe in the first place, they implemented a safety campaign that is outlined throughout the record of utilizing everything from hotlines to mailers and insurance. Do you accept as a threshold matter that we should be considering issues of adequacy of notice now in connection with ascertainability? Or is it your position that that's something that should be considered later in the normal course? Your honor, typically, with the notice requirements being a part of whether it's a feasible on the administration to back it, ascertainability historically was just whether there were objective criteria that could define whether someone is a class member. Counselor, your time is almost up. You've reserved five times for rebuttal. Could you switch gears and go to the issue of commonality and predominance? As far as I can tell, the only common aspect here is the product and the course of conduct. And I don't even know if that's an issue. We have the product. We have what they did. So those issues would seem to underwhelm the other issues having to do with the installation, bonding and grounding and, you know, causation, intervening causes, damages, the kind of damages you're seeking, whether it's repair, whether it's lost value, whether it's insurance. Those issues seem to predominate. How do you satisfy commonality and predominance here? Well, your honor, it's important also to point out that because the court combined commonality and predominance below, it is difficult to separate it for purposes of the Rule A element. So I'm going to combine it as well here since we do believe both are met. There are multiple levels. We have to still prove common across the board whether the product itself is unsafe, whether there is a safer alternative design, whether the manufacturers knew, and if they did know, what efforts they took in order to continue to protect the public. More importantly, your honors, both bonding and grounding and what we've identified as the authority having jurisdiction cross state lines. If bonding and grounding is not effective, then whether something is bonded and grounded is irrelevant. You have huge causation problems, do you not? No, your honor, we don't. Because the liability, we proposed a hybrid, a bifurcation of proceedings. Only in a fire incident would you have a causation problem. Our case sets forth that this is an unsafe product, that the retrofit suggested doesn't make it safer. It's not the cause of the fire as much as the cause proclaimed by the defendant. Every single home with ProFlex installed needs to be inspected, needs to be bonded and grounded, needs to be approved by the authority having jurisdiction. Those are the commands of the manufacturers, and that is uniform. That is predominant. I mean, this is like the shingle case. You're going to have to go house by house to see how it's been installed and what happened. If somebody wants a loss of value of their home, you're going to have to say, well, was that caused because they didn't take care of their home generally? You're going to have all these issues. Your honor, if we get to those issues on the damages level, it doesn't address whether all of the liability questions are still the same across the board. How about your state laws? You didn't even attempt to come up with a grouping of this group, this batch of states will have this strict liability or negligence elements, this will have this. You haven't really done the work that the district court needs to have done, do you? Well, your honor, we did. We prepared the charts that separated out the states, the states that adhered to the restatement of torts, those that complied with, and again, the focus being on the liability questions. Unlike Gonzalez v. Corning, the shingle case, there was more to it than whether the shingle was there. Every shingle would have to be tested to determine whether or not it was failing under the standards. Well, and isn't every house going to have to be inspected? Not by an expert, not like in Corning, no, your honor. The photographs provided by the defendants themselves indicate that you can see it when you walk up to the water heater, when you walk up to the meter. These are exposed when you look in the attic. But you can't see the bonding and grounding and the quality of it, whether it was done correctly or not? Again, your honor, whether the bonding and grounding occurred, you can see, because that's something that occurs on the outside of the home. As to whether it was effective or not, again, that's our, that's the whole point of the case. If bonding and grounding isn't effective, it doesn't matter if it's bonded and grounded. You're making a blanket statement that bonding and grounding doesn't work at all. Isn't it more likely that it's going to be whether it works depends on who the installer was? No, your honor, it's not. Because of the code requirements and all the different, we've been. Your representation is there's only one way that bonding and grounding can happen. If it's not done correctly, it's, they're liable. No, your honor, it is our position that bonding and grounding doesn't make an unsafe product safe. And if it doesn't, then all of the different causation issues individualized that, as defined by the defendant, don't come into play. We never get to having to test the aspects of causation because we're not just talking about fire events. Our argument is that the placement of this product, an unsafe product in the home, and we had expert testing materials provided, but because we didn't have experts outside the case management plan, we weren't allowed to go into expert testimony or bring experts to the court. Let's move on just quickly because you're beyond your time, just on numerosity. Where in the record is there any evidence that we could identify the number of plaintiffs, class members, rather, that would be in Pennsylvania if this were a Pennsylvania-only class? In a Pennsylvania-only class, your honor, we would look first to the fact that there were over 700 installers. Installers doesn't tell me how many owners there are. It just tells us that there are 700 people who could install. So what in the record would let us satisfy the level of numerosity that we would need to be satisfied to have here? Your honor, there isn't a specific number because there aren't any corporate records. What we can say is that numerosity and the fact that joinder is not practicable because all of these locations, the retail stores, the wholesale stores, even in the Adams Point locations, that it's not practicable to have all of these on individual joinder as opposed to... Circular? I mean, that would be assuming that the number is such that joinder would be impractical. But, your honor, circumstantial evidence can be combined in total to look at that. Circumstantial evidence you've pointed to is the fact that there are hundreds of installers in Pennsylvania. Your honor, we have, we provide testimony, I mean, not testimony, your honor, documentary proof. You can find it at 979 through 982 are the highlighted portions. Not only the market share, not only the business records, not only the admissions by the manufacturers that over 40,000 homes have it installed. So, that's on national, that's for your national class. I'm asking a really specific question because our case law says, even if you could satisfy numerosity for a national class, that doesn't absolve you from having to satisfy the alternative state-only class. Understood, your honor. And we would turn then to, again, the opinions of this court looking at the totality of the information. We don't have a specific number. I'm not going to represent to the court that we do. What in our case law would allow a finding of numerosity when we've said that it's not enough to have a good bet, right? And we've said that over and over and refused to infer numerosity just because we've got a large set that might produce a sufficient subset. I think the difference, your honor, is in, for example, the Milo case where the good bet language came out. There's just a large number of disabled individuals and a large number of stores. And so surely in there somewhere is the numerosity element. We're a little more specific here because we actually target, again, we have a specific number of the installers. We have a specific number of market share. We have a specific number of wholesalers that sell in Pennsylvania. We have a specific number of retail stores that sell in Pennsylvania. It's not a safe bet so much as it is a common sense. This court has never said that you can't utilize common sense when you combine all these numbers. We'll have you back on the ball. Thank you, Your Honor. The court has been advised that there's a sharing of time. Yes, Your Honor. My name is, may it please the court. Good morning, Your Honors. My name is Adam Frankel. I'm here on behalf of ProFlex. And our co-defendant's counsel for TrueFlex entity will be sharing the remainder of the time. I would like to just touch on the standard of review, if I may, at the outset. I think that in Adam's point's opening brief, they've kind of muddled the standard of review in terms of the abuse of discretion and what is de novo. They've clearly set out the correct standard that the abuse of discretion requires reversal based on an erroneous finding of fact, or a conclusion of law, or improper application of law to effect. But they have cited a Ninth Circuit case saying that a reviewing court typically accords a district court noticeably more deference to a grant of certification rather than a denial of certification, which isn't the law in this circuit and would seem to have its own inherent conflicts. Well, the meaning of ascertainability, what's required for ascertainability in any event is a legal question that we'd be exercising plenary review over, right? Well, this circuit holds that it's really a narrow exception, and it's to the abuse of discretion standard. In Hays and in rehydrogen peroxide, the narrow exception is the abuse of discretion applies whether an incorrect, I'm sorry, de novo standard applies only to whether an incorrect standard has been used. An excellent example is the court's discussion in Reyes where the judge talks about the numerosity and gives different examples of when would apply it. If the court misarticulated the legal standard for numerosity, then de novo would apply. But the district court's conclusions of law are given discretion. Can we get to ascertainability here? Yes. There's something more than just a situation where someone says, well, I took this aspirin, trust me. You have a situation where it can clearly identify these pipes. You go into the house, and there it is. And somebody can say, you know, it's in my house. Somebody can second guess that. So why don't we satisfy ascertainability where it's not like the tires and BMW, it's not like the aspirin. The pipe is there, and we can see it, and we can tell that it's there, and someone can second guess it. Why is that not sufficient for ascertainability? Your Honor, the difference is identifying, first of all, notifying, putting people on notice, potential class members on notice, whether to look for this pipe to investigate. But the problem with Adams Point's position here is that everything that they suggested in terms of an administratively feasible method has to do with verifying or confirming after the fact, not identifying class member, a methodology that's potentially able to identify the class members in the first instance. Is that going to a notice requirement? And if so, why should we be considering that now rather than later in the normal course of assessing a sufficiency of notice? That's a point well taken, Your Honor, and it's really a question of efficiency, first of all. Well, with notice, I did want to speak to something that counsel mentioned, that there's been a more broadened standard for best practicable notice. And this Court has said that the Court, for providing notice in class actions, that the best notice is practicable, including individual notice. We are stringent in enforcing the individual notice requirement. The ascertainability requirement ensures class members can be identified after certification and better prepares the district court to direct the class members to the best notice that is practical. So having, being able to have, not identifying them, but a method to identify them. The problem is, let's say hypothetically the installers were subpoenaed and they returned the records requested, and the records requested identified the homeowners. Let's assume they did, your adversary had done a spot check. Would we then have a circumstance where our ascertainability law would have been satisfied? Put differently, do we have a failure of proof here, rather than a legal, some kind of legal dispute as to what it takes to ascertain? I believe it's a question, it really turns on the way the commerce is set up, the transition, the way the transactions are set up. So it's a limitation on what the records can actually reveal. But if the records here, if they subpoenaed the records and the installers' records identified the homeowner of installation. The installers' records, that would be potentially a feasible method of, but. Is your complaint about their ability to ascertain not, it's not that we can't see the product, it's just we don't know where the product is. And had the plaintiffs gotten those records, we would know where the product is, because your clients, as I understand it, would not know where the homeowners are. That's right. I mean, because the universe of houses that could or structures that could contain this would be very difficult to isolate. This is not like in Hargrove, where there was a legal requirement for the employer to keep records. The qualified installers are under no legal obligation to do so. And the, like the big box stores, your Lowe's, Menards, that individual installers may purchase from or contractors may purchase from, they don't, they have general records. But if they can direct to qualified installers, it stops there, because the qualified installers don't keep such records. Well, how do you know that? How do you know they don't keep records about where they install? Well. Is there anything in the record that would tell us that? Well, we would know that, because they have, there's no good reason that Adam's point has not subpoenaed any of the qualified installers. There was a representation by counsel, there was a subpoena issued, this wasn't returned in time for the, you said the certification hearing. But I want to go back to, because you represented that the installers don't keep records. Is there anything in the record in front of us that says installers don't keep records? I know there's representation, you all don't keep records of where it was installed. But is it your representation, the installers don't keep records of where they installed the product? I don't have affirmative evidence that they don't, but I think it's a very fair presumption in this amount of time they would have, they subpoenaed the big box installers that retail it to others, but they didn't send one subpoena to any of the qualified installers to find out if they did have information of the structure.  I believe that's one aspect of it, yes. I think it's limited by just the circumstances, the nature of the transaction, the indirect. Limited by whom? A plaintiff is limited by what it can find? Who's bearing some limitation? Because as I understand the course of commerce, it gets manufactured, it goes to some entity, it then goes to either the box stores or some other place qualified installers can buy their product, installers get it and they install it, right? It's a pretty easy chain. Issue some subpoenas, you figure out where the documents tell you where it was installed. But when you have qualified installers that don't retain these records. How do you know they don't retain them? Is there anything in the record that tells us the installers don't retain the records? You're only surmising it because it's not been produced, am I correct? Well, exactly. I think that if Adams Point subpoenaed the retailers that sell it, why not after all this time and in the district court asking for how do you propose to identify? Can I ask you about numerosity before we let you sit down? Yes. Your adversary made representations to the magistrate judge during the hearing, before the magistrate judge, about numbers. And I just want to know whether or not, in fact, you do not dispute numbers. For example, the representation is about 32 million feet of the product was sold and about 500 linear feet is used in every home. Do you not dispute that? I can't dispute. What I can tell you is that there's 3% of the market share is what ProFlex is in and there are, I think, Adams Point is estimated, I forget the exact number, but. Do you concede it was installed in 5 million homes? That is another representation that was made by plaintiff to the magistrate judge that the defendants don't contest it was installed in 5 million homes. That would be based on an estimate of a division of how much feet they're using, the length of the cable and dividing it by how many structures. There's no. Do you dispute that? I'm driving for the national class number. Is there a dispute that 500 linear feet is used in about each home and if you sell 32 million, taking with the market share, it gets us to about 5 million homes. Is there a dispute by the defendant on that point? Just the accuracy of it.  My colleague can speak more to that. Okay. He gets to do the arithmetic. Is there any evidence in the record about the Pennsylvania properties? I don't believe so. I think everything is based, when you're using length, it's based on feet and so then it's been divided. I don't know that there's anything actually. About Pennsylvania properties? Yes. Okay, thanks. My colleagues have any questions, further questions for this attorney? Can we just go back to ascertainment for a moment? And let's say we take notice out of the picture. Okay. Then why isn't what the plaintiffs have already posited sufficient under our ascertainability standard? That is, why isn't this a case just like Carrera, except we don't have to worry about customers coming up with receipts because they can send in a photo and confirm with that evidence. This is a fixed installation in the home. So why isn't it like Carrera with the receipts and even more? Well, in this case, all the affidavits would do would be another means of verifying something that needs to be ascertained in the first place. But this is in addition to the affidavits. In Carrera, we were left with affidavits. Yes. But that's because we couldn't figure out a way for those who would purport to be members of the class to document that. We didn't expect people would keep receipts, and there weren't other records that were being retained through the supply chain. Sure. But here, why isn't that structure and a photo that could be provided by a homeowner like even better than a receipt? So that we have what was missing in Carrera, an affidavit, plus that documentation. I think it boils down to what would be the impetus for them to be informed about it, learn of this, and then go and look for this particular product out of all the numbers that they're claiming in all these different homes. Why would they all of a sudden do that? Well, you have undertaken a campaign to educate and put out the word. Yes. And so you're in the rather awkward position of saying that that's actually not adequate, right, that that wouldn't reach. In fact, it's not sufficient to reach those in the various channels that you put out, the notice for that campaign, who have this product in their homes. Can you really be saying both things? Yeah, because in this situation, that is something that, first of all, that would fall into two different groups, where I think your Honor said a failure proof, where qualified installers and people, contractors, would be part of the safety campaign and alerting the public in other ways. But Adam's point has used a continuously evolving means of getting out, of informing people of whether or not they should even look for this product. What I think Judge Cross is saying to you is if your company has some kind of information campaign to advise those who have the product to bond and ground, then there is obviously a mechanism to give notice to those who have the product. And that's, I think, what Judge Cross is saying. You're in a tough spot to make the argument we can't do this. Well, this circuit holds that the best and most practical is individual, informing individually, and maybe even publication in addition. But the safety campaign doesn't necessarily mean that – I see what you're saying, how two things might be untenable, but there's no assurances. And I think the bottom line is that there can't be any assurance. How did the company know where to send the safety information? How did you know to whom to direct the campaign? I believe my colleague would be better suited for that. Okay, he's going to do math and information. Then we're going to have you take a seat. I appreciate it. All right, you're welcome. Thank you. Judge, good morning again. Tom Peay, on behalf of both TruFlex, Applebee's, TruFlex Metalhost Corp., and TruFlex LLCs, could be with me in person this morning. We appreciate your consideration. Judge Schwartz, I have an outline drafted, but I'd like to go right to the arithmetic that you were talking about in terms of the affirmations or our admissions at the district court level for numerosity. It's my understanding there were three pieces of circumstantial evidence that was sought to extrapolate numerosity at a national level and then thereby a Pennsylvania class. Those three pieces of information were the installer cards in 50 states. We've discussed that at length. Twenty million feet of ProFlex CSST installed. The five million homes that you were referring to, I believe, it's my understanding that that number is a Yellow Jacket CSST generally. We have a 3% market share, but the five million homes is a general number from Yellow Jacket CSST from all manufacturers. And there are... How do we know that from the record? Because it's a representation. The plaintiff makes a representation to the magistrate judge and said, the defendants conceded five million homes. How do we know that that was an overstatement? It's not. It captures more than the product from the record. I can't think of the exact reference or the exact volume exhibit for where that is, but I believe it's a general policy statement or some sort of publication from a CSST group that that is likely what is the Yellow Jacket CSST in the United States. And from the record, what could we tell about the national sales of your client's product? In the record, those three pieces of evidence, from my understanding, the installer cards in 50 states, the 20 million feet of CSST from ProFlex installed. That's my understanding. That's also in the record. And there are admissions in written discovery and certification discovery from ProFlex that they did sell this product to big box stores and distributors in 50 states. So those are the three pieces of high-level statistical evidence that was presented. But importantly, there's no extrapolation from those numbers to give the district court something to put its finger on that, aha, these numbers can now be extrapolated, because I have that there are this many properties in Kansas with this amount of feedback. Well, the representation, as I understood it from the hearing, was that there were 500 linear feet in the home. And so my first question is, is there a dispute about that representation? That, Your Honor, is an assumption, because the ProFlex CSST can be strewn throughout the home from the point of gas entry to the gas utilization equipment, or it can be used in narrow circumstances where it's run off of a main gas line to a fireplace. And so that's an assumption. Therefore, you do not concede that's 500 linear feet per home? We would not concede that point. And then the next was the representation. As a result, it would be 40,000 to 50,000 homes. These are representations. I didn't see in the record before the magistrate judges, anybody from the defense side disputed those representations. They were just made. At the certification hearing, I believe I was the one that disputed the 40,000 to 50,000 homes. You did dispute that? I believe I did. And if not, it would be in the record, obviously. But that was a mere assumption. There was no expert testimony of extrapolating out what that amount of feet might look like in a given property. Why isn't that just a matter of common sense? I mean, we've got 50 states. There's no dispute about that. That's more than 40. Why isn't that enough? Your Honor, I would submit that that type of evidence would be what this court fears of what it would do to numerosity. And that would kind of read that element out of Rule 23. There's an evidentiary finding that the district court has to make by preponderance of the evidence that numerosity is satisfied at the national level and at a state level. I think if this case were to suggest that numerosity was satisfied on those three pieces of evidence alone, it would begin to erode that rule completely out of Rule 23, and it would be just a speed bump on the road to commonality and typicality, where they just have to allege high-level statistical evidence that numerosity was satisfied. At some point, doesn't it become such a good bet that numerosity could be satisfied? Or do you think numerosity really requires a certainty? I don't think it requires a certainty. I do think that there is enough evidence eventually, but this is not that type of case, especially with a national class being sought. And the numbers and the amount of CSST in a particular structure vary widely, is my understanding, because it could be a small section like we've noted, or it could be run throughout the home, or the structure, because it could be in commercial buildings and other industrial settings, et cetera. I'd like to switch to commonality and predominance. Why isn't your opponent's statement that the predominant question here is the safety of the product? Why shouldn't we let that proceed as a common question? Yes, Your Honor, that's a very good question. And my answer to that would be that that question alone does not get us to the ultimate determination of liability in this case. In other words, it wouldn't further the case enough from our position. There are other things at a product construction defect level that too many hands, too many important things have to happen for this product to perform its intended use. And that is primarily, most importantly, the installation of the product, pursuant to local codes, whatever jurisdiction that house or structure is located in. So, for instance, a C-4 issue class might further some of these liability determinations, but it really doesn't get to the ultimate determination where a C-4 class might be appropriate, where damages need to be calculated on the back end. But aren't you going to contest pretty strenuously the safety? Aren't you going to really put forth a lot of evidence that the product really is safe? Exactly right. So that's going to take a lot of time and a lot of effort, and shouldn't that be decided on a class-wide basis? And again, from an individual level, it then has to go to what the specific property is like, what the installation is like. But that happens all the time. Proofs of claim are filed, and you'll contest whether you really have a claim against them or whether it's against someone else. Doesn't that happen all the time in class actions? I think it does, but not on this type of scale. With regard to the superiority or the defendant's due process rights, where it has the ability and the right to really get specific and a property-specific inspection occurs. For this case, Your Honor, is an example of that general principle where entities that are associated with the named representatives have been added as third-party defendants because they're the ones responsible for notice, for installation, for the maintenance of the product. So those types of entities are set to mitigate the liability of ProFlex and TruFlex in these types of instances because if not, then we have an instance where we are paying beyond what our liability should be in these particular cases. And that's where it becomes individual, and that's where it becomes important from our standpoint. To follow up on Judge Rendell's question about commonality and predominance, if it were a Pennsylvania-only class, isn't predominance and commonality satisfied? We agree that it's easier than a national class from the state law variances that Judge Rendell was talking about easier, but it's my understanding the Pennsylvania-only class deals with the Consumer Protection Statute in Pennsylvania. That's the only cause of action that the Pennsylvania-only class? I believe so, and Counselor Filly-Pallant can correct me if I'm wrong. That's not how the complaint reads, but I'm happy to ask her to clarify. Okay, thank you for your answer on that. And then I have another question, and then I'll see if Judge Rendell has anything further. I mean, Judge Krause, I'm sorry, has anything further. Your adversary said you might be able to answer our questions about the informational campaign. Yeah, I appreciate that. It's nice to have friends, right? Yes, ma'am, go ahead if you can. So the question is, if the entity had the capacity to figure out to whom information needed to be conveyed so they could do their bonding and grounding, why isn't that? Why don't we have a mechanism where we can ascertain who needs to know about the potential hazards from the plaintiff's point of view of this product? That's a good question, because on a high level, that does make sense. We're in that tough position of saying we're explaining to people that this needs to happen, but at the same time, we're arguing here that ascertainability is different. I think the biggest difference is that that type of notice campaign that occurred does not necessarily extrapolate into the legal requirements of ascertainability and notice and those types of things. It wasn't set up, from my understanding, to reach every individual consumer. It was set up on a broad level because we don't concede the idea that the product is generally unsafe. Obviously, the product is safe, and this would further the safety of the product, like the bonding and grounding, for instance. So that type of notice does not extrapolate and does not get the appellants to the type of notice or the type of identification of the properties or the people that own properties. But in order for your informational campaign to be effective, it had to get to the destination, namely the place where the pipe is located, right? Understood. And there are only so many ways, given the stream of commerce with this particular product. We are limited. But obviously the entity had some knowledge to whom to send it, correct? We don't have knowledge of who specifically to send it to, but we obviously have customer lists and installer cards of where these people are located. So your representation is the information campaign went to the installers and then stopped? No, I think it was more broad than that. I think it was just a general statement in the industry generally. So you've had these years to develop different channels to try to get the word out there. Why isn't that, as now documented by your own experience, the best practical notice available? And I think that might go to one word, and that's feasibility. I think if we've had years to develop that, it speaks to the difficulty of tracking down the individuals and the properties that actually have this product in it. This is a construction product, a gas piping system that's utilized and strewn into all of the product and the home generally. So it's just the way this commerce takes place, it's just hard to get to that end result of who actually has the claim, who has the property in it, who owns the property that has the product in it. I think it just speaks to the difficulty of it. Why isn't it sufficient that you've identified the channels over this time period? I mean, I understand over that time period you may be able to reach more people with more time, but isn't the point that you've identified the channels to be able to give the best practical notice for purposes of your safety campaign? And I guess the best practical notice in this instance we would hold is still insufficient to get to the ascertainability number and the numerosity number. It just doesn't go far enough. Why should we import into our ascertainability standard, which already puts a burden on plaintiffs that not all circuits have followed, the need to establish as part of ascertainability the adequacy of notice? And I think that might go to, and I'm not sure if we would be advocating for a notice requirement in ascertainability, but I think that goes to, again, the feasibility of the method. If these people can't be found by affidavits or by saying, yes, I have an LG refrigerator in my home, I have this product because I'm the one that went out and picked this product, it just, I think it makes it more difficult, given the scope of the product, which then necessarily takes us to, how are these people going to be notified? But for purposes of being able to identify themselves as an actual member of the class, which is what I think we're looking at for ascertainability, why isn't this just like Carrera, except we've got those receipts? In fact, we've got the fixture permanently installed on the property. So you don't have a situation where we're limited to an affidavit alone. I understood. I think it's just too difficult to get to that point, and the district court found that it was too difficult to put their finger on it and say, I am satisfied by preponderance of the evidence that these people are, at least all of the named plaintiffs or a vast majority of the class representatives, I'm sorry, the unnamed class members, can be found with this method proposed. Is the issue whether they can be found or whether they can be identified with sufficient accuracy as a member of the class? I think that might be a distinction without a difference in that eventually, especially in a situation where the defense has certain individual defenses available to it in the property, I think it's important in this case to actually know of the property that it's installed in, because we have a right, obviously, to present available defenses in these contexts. So I think eventually we're going to have to be specific, and we can't proceed in this type of case with a group of unnamed class members. Okay. All right. Thank you very much. Yes. All right. We'll hear out of Surrey on rebuttal. Thank you, Your Honors. If I might, off the top, I do want to clarify just a few issues in terms of what the record does contain. I know, first of all, for the numerosity issues, there are specific record citations where those numbers were taken from. Not only were they presented as part of the hearing, but they were also contained in the record itself. Specifically, the customer lists, customer agreements, sale representative agreements were found at JA 385 through 390. The citations to the wholesale locations and sales, including Pennsylvania specific, was at 94 through 186. The entire list of qualified installers, not just a card from 50 states, but the qualified installer list, the spreadsheet, identifying the Pennsylvania were found at 187 through 237. And specifically on the numbers of 20 million feet and how many homes, those were taken from the executive summary produced by the manufacturers. For example, page 1107 of the joint appendix details these numbers, not only the amount of ProFlex sales, not only the amount of the market overall, but then we also have the attachments of the actual ProFlex sales on a year-by-year basis also attached to the record. So these numbers didn't just come from a derivation of the entire nation. 500 linear feet, like the arithmetic that was done on the record for the judge. Your Honor, that was in two different locations in the record. First, the ProFlex corporate representative, Mr. Brian Bowman, confirmed that calculation during his deposition, which was also presented at the hearing. And another location was in the Mark Goodson affidavit and articles attached to it. I know there was an accusation that we didn't present expert testimony, but again, we weren't permitted to permit expert testimony. We repeatedly asked to include experts, and that was excluded to the second part of a bifurcated discovery proceeding. So we did what we could. But we utilized actual numbers, actual records, and derived those numbers through proper calculations. Is this an opt-out class? Your Honor, it would be. But in terms of on the bifurcation that we had requested with the trial plan, if someone did not want to participate, for example, maybe they had a fire, so they wanted to have an individual claim, they would be able to opt out. But how can we require people to opt out when we can't tell who they are? Your Honor. We can't be sure that we're going to get to them. Again, and I think it's important the way the distinction was made by Judge Krause, and although the manufacturers described it as a distinction without a difference, it's a very significant difference. Notice as to whether the lawsuit is going on as opposed to the claims administration of knowing whether they're bound by an ultimate opinion. The defendants have a hard time getting around the safety campaign. They provided a means that they claimed they spent a lot of money on and that we targeted the homeowners, not the general public. In the joint appendix, we have the actual scripts from the hotlines. Could you go to the defendants and ask them, tell us to whom you sent this notice? Because wouldn't that have been a super? It was even easier than doing third-party subpoenas. The answer to a really direct question, did you inquire, not you personally, but did the client inquire as to whom the informational campaign went to? Yes. Yes, Your Honor. We did. Did you learn from that whether it went to homeowners? Yes. And how many homeowners did it go to? I don't have an exact number. Is it because it's not in the record or is it because you just don't know it, like you can't recall? Right. There's no way. It goes back again to not having a direct customer list, having a direct number. We don't know. Here's what we do know, though, Your Honor. That's the participation in the safety campaign, which was put on by the National Association of Fire Marshals. They had specific statistics and numbers, which are part of the record, that they utilized not only for the campaigns on a legislative level, through insurance companies, through direct mailers to homeowners. Isn't there a difference in the standard that would be applied in the adequacy of the notice that is put out by the defendants in their safety campaign? They may be taking on more or less risk with how they go about putting out the word on safety. But where we're thinking about notice, especially with an opt-out class, we need to consider due process. Yes, Your Honor. How would due process be satisfied with that sort of general announcement just going through suppliers, installers, publication alone? Your Honor, it would be difficult to reconcile best notice practicable with direct customer list mailers. I mean, best notice practicable inherently takes into account, just like the federal rule changed in 2018, that the best notice practicable may not be a direct mail. I know that's what the manufacturers say that this court demands, but that's contrary to the Carrera case. It's contrary to any consumer protection action. But when the court is evaluating best notice practicable, it's not doing it in some kind of hypothetical. We're doing it in a concrete case. And it sounds to me that this is the type of case where the best notice practicable is going to the installers and saying tell us where you installed the product, correct? That would be one of the steps, Your Honor. But we say the best notice, we're willing to do an even greater best notice practicable, not just the installers, obviously including them, Your Honor. I don't mean to give them notice. I mean, go to the installers and figure out to whom do I need to get notice. Absolutely. So that you can actualize what Judge Rundell was talking about, which is actual knowing, opting out, as opposed to, oops, I missed the notice. The safety campaign, it was directed at all of this type of yellow jacket, not just ProFlex. Is that correct? That's correct. They were individualized. All the manufacturers got together and worked with the National Association. Now, I think your opponent, I believe he said their market share was only 3%. Is that correct? But back in 2012, that market share, which was found on page 1107, but the safety campaign wasn't limited to market share. It was a everyone go look for your yellow jacket. If it is ProFlex, here's the information for the ProFlex manufacturer. If it's OmegaFlex, here's the information for OmegaFlex, and so on. They put a website. Are the installers going to know which they put in whose house? Yes, Your Honor, they would. Every specific record, though, aren't they? Yes, Your Honor, they would. But, again, in terms of understanding administrative feasibility, either there is a firm records requirement with a direct customer list, which obviously severely hampers the purpose of class actions. Well, but we have held, I don't know of any case where we said anything less than a record plus affidavits. And, Your Honor, that is why we've proposed that in this case. The records requirement plus affidavit and the records requirement. The records requirement is an identification requirement, not do you have, you know, a piece of paper. Your Honor, but contrary to an affidavit, for example, in the Carrera case, where someone could say I purchased this aspirin, or in the Hayes case where they said I purchased as is at Sam's. In this situation, actual photographic proof can be provided. Inspection reports could be provided. There's multiple mechanisms for verification. And, Your Honor, in understanding whether there's a question of proof versus a question of legal standard, that was why we asked for permission to appeal this case. Because without clarification of these legal standards, in order to determine what was required at the level of proof, there was no way that we could go back to the district court or the magistrate and try to answer those questions of proof. If we're not looking at the same legal standard, we can't look at the same conclusion, which is why we request this court vacate the order denying or provide instruction as to what these legal requirements are so that, to the extent that the voluminous record wasn't already sufficient once examined on its face, that it could be clarified for the court. Okay.  I thank both sides for their arguments and their briefing. The Court will take this matter under advisement.